# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00313-CV

**Merrimon W. Baker, M.D., Appellant**

**v.**

**The Texas Medical Board and Donald R. Patrick, M.D., Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
## NO. D-1-GN-08-000459, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The Texas Medical Board ("the Board") revoked Dr. Merrimon W. Baker's license to practice medicine for violating an agreed order ("the Agreed Order") prohibiting him from performing "spine surgery." Baker filed a suit for judicial review of the agency order. *See* Tex. Gov't Code Ann. § 2001.176 (West 2008). The district court affirmed the agency order. In three issues, Baker contends that the agency order is not supported by substantial evidence, that the Board failed to make required findings, and that the manner in which the administrative record was prepared violated his right to due process. We will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Baker held a license to practice medicine, which was issued by the Board in 1983. Baker predominantly practiced general orthopedic surgery, was board certified in orthopedic surgery by the American Board of Orthopedic Surgery, and was a member of the American Board of Medical

Specialists. In October 2006, Baker and the Board entered into an Agreed Order in settlement of a complaint filed against Baker by the Board. The Agreed Order described several instances in which Baker had violated the standard of care with respect to several surgical and non-surgical patients, as well as his deviations from the standard of care for post-operative care management, including lack of adequate medical-record documentation of the bases for medical decisions and the rationales for performing surgical procedures. The Agreed Order also recited that Baker had previously been the subject of disciplinary action by the Board. Baker's license to practice medicine was suspended, but the suspension was probated on the condition that, among other things, Baker "shall not perform or be present at any spine surgery."

Four days after the Agreed Order's effective date, Baker performed kyphoplasty, a procedure used to treat fractured spinal vertebrae, on a patient at the Dickerson Memorial Hospital. After learning this, the Board held a temporary suspension hearing at which the Board's disciplinary panel determined that Baker had performed a spine surgery, namely kyphoplasty, in violation of the Agreed Order. The Board ordered his license temporarily suspended. Baker was then invited to attend an "Informal Show Compliance Hearing and Settlement Conference" (ISC). Following the ISC, the disciplinary panel offered Baker a new agreed order, which he signed. The Board, however, rejected this proposed agreed order and instructed its staff to file a complaint against Baker with the State Office of Administrative Hearings (SOAH) seeking to revoke Baker's license.

The SOAH hearing was held in May 2007 before an administrative law judge (ALJ). Both the Board and Baker appeared and presented evidence to the ALJ. After the hearing, the ALJ prepared a detailed proposal for decision (PFD) that included her conclusion that "revocation of

2

[Baker's] license is an appropriate sanction." The PFD also included twenty-three findings of fact and ten conclusions of law, one of which stated: "The Board should take disciplinary action against [Baker's] medical license, pursuant to § 164 of the [Medical Practice Act], and should revoke his medical license." In a Final Order signed on November 30, 2007, the Board adopted the ALJ's findings of fact and conclusions of law, with the exception of the above-recited conclusion, which it noted was not a conclusion of law, but a sanction recommendation. The Board agreed, however, that the proposed sanction of revocation was appropriate and adopted it as the sanction of the Board. The Board ordered Baker's license revoked. Baker then filed a suit for judicial review in Travis County district court. The district court affirmed the Board's order, and Baker perfected this appeal.

**DISCUSSION**

*Substantial Evidence*

In his second issue, Baker contends that there was not substantial evidence presented at the hearing to support the Board's finding that kyphoplasty constitutes "spine surgery" such that by performing this procedure, Baker violated the Agreed Order. *See* Tex. Gov't Code Ann. § 2001.174(E) (West 2008) (in suit for judicial review of agency order pursuant to Administrative Procedure Act, reviewing court may reverse or remand case if substantial rights of appellant have been prejudiced because administrative finding is not reasonably supported by substantial evidence considering reliable and probative evidence in record as whole). The substantial evidence test is "a reasonableness test or a rational basis test." *City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 185 (Tex. 1993) (citing *Railroad Comm'n v. Pend Oreille Oil & Gas Co.*,

3

817 S.W.2d 36, 41 (Tex. 1991)).  Although substantial evidence is more than a mere scintilla, the evidence in the record actually may preponderate against the decision of the agency and nonetheless amount to substantial evidence.  *Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984).  We consider not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency.  *Id.*  We may not substitute our judgment as to the weight of the evidence for that of the agency.  *City of El Paso*, 883 S.W.2d at 185.  The findings, inferences, conclusions, and decisions of an administrative agency are presumed to be supported by substantial evidence, and the burden is on the contestant to prove otherwise.  *Charter Medical*, 665 S.W.2d at 453.

Our review of the record reveals that the Board's finding that kyphoplasty is spine surgery is supported by substantial evidence.  First, Kim Garges, M.D., described the kyphoplasty procedure.  During this procedure, the patient is placed prone on an operating table and the level of fracture of the vertebra is identified using a fluoroscope.  A "K-wire" (a large-diameter device with a pointed end) is inserted through the skin into the pedicle (a conduit into the vertebral body).  A drill is used to penetrate the pedicle, and a portion of the sheath is pulled out and replaced with a cannula (a tube used for delivery of material into the vertebra).  A balloon is inserted into the drill hole to the proper depth, and the balloon is tamped and filled with water.  This decompresses the vertebra, creating a space into which bone cement is injected and allowed to harden.  The bone cement remains in the space permanently.

John Neal Rutledge, M.D., an interventional neurologist, testified that he was trained in kyphoplasty in 1997 or 1998 when it was a new procedure.  In Rutledge's opinion, kyphoplasty

4

is a surgical procedure of the spine and is one of the procedures that the Seton Hospital surgical council includes in its review of surgeries performed in the hospital for morbidity and mortality and to identify problems in an effort to improve surgical outcomes.

Garges testified that, in his medical opinion, kyphoplasty should be considered spinal surgery. Garges stated that his opinion was based on the nature of the procedure itself, the fact that the procedure uses orthopedic and surgical instruments, and the fact that Baker's own records related to kyphoplasty he has performed reflect that he treated it as a surgical procedure. Garges observed that Baker's own office notes refer to kyphoplasty as a "surgical intervention" and a "surgical procedure." Moreover, Baker had obtained a surgical consent form from the patient on whom he performed the kyphoplasty.

Garges also testified that the website of the American Academy of Orthopedic Surgeons describes kyphoplasty as "a minimally invasive spinal surgery procedure . . . used to treat painful progressive vertebral body collapse or fractures." Garges further testified that the website of the North American Spine Society describes kyphoplasty as "a new minimally invasive surgical technique for treating fractures of the spine due to osteoporosis."

Baker contends that Garges's testimony should be disregarded in a substantial-evidence review because he is not qualified to testify about the kyphoplasty procedure. Specifically, Baker asserts that Garges "is not an expert in Kyphoplasty." We disagree that Garges was not qualified to provide testimony regarding whether kyphoplasty is spine surgery. Garges is an associate professor of orthopedic surgery at the University of Texas Medical Branch in Galveston. He serves as the chief of spine surgery for the Department of Orthopaedics and Rehabilitation at the

5

university and directs the fellowship program. Garges testified that he is familiar with the procedure and was trained to perform it by Kyphon, Inc., the entity that developed kyphoplasty. Moreover, Garges's testimony consisted of more than his own opinion regarding the nature of the procedure; he also testified that two national professional organizations describe the procedure as "minimally invasive spinal surgery."

Baker testified that his use of the term "surgery" in his own records of the patient on whom he performed kyphoplasty was "boilerplate" language inserted into his records by a medical transcriptionist. In Baker's view, kyphoplasty is not spine surgery but rather an "injection" similar to an epidural. Baker further testified that a University of Washington website described kyphoplasty as "nonsurgical" in nature and that he had learned through inquiry that at the Mayo and Cleveland clinics, kyphoplasty is performed by radiologists. Baker also offered the testimony of Michael Smesmy, a hospital administrator, who testified that radiologists are credentialed to perform kyphoplasty at hospitals he is affiliated with. Jeffrey David Reuben, M.D., testified that he did not agree that kyphoplasty should be classified as spine surgery because it can be done with minimal invasiveness, does not require a large incision, and does not involve exposing the spine.

Having reviewed the evidence presented at the hearing before the ALJ, and considering the reliable and probative evidence as a whole, we conclude that the Board's finding that kyphoplasty is "spine surgery" is reasonably supported by substantial evidence. In other words, a reasonable basis exists in the record for the Board's action. We overrule Baker's second issue.

6

*Mitigating Factor Findings*

In his first issue, Baker complains that the Board did not include in its final order findings on mitigating factors that he contends were required by Board rule 190.15. *See* 22 Tex. Admin. Code § 190.15(b) (2012) (Tex. Med. Bd., Aggravating and Mitigating Factors). Rule 190.15 provides, in pertinent part:

> (b) Mitigation: In any disciplinary action, the following may be considered as mitigating factors that warrant less severe or restrictive action by the board. The licensee shall have the burden to present evidence regarding any mitigating factors that may apply in the particular case. A final order shall include a finding of fact on each applicable mitigating factor:
>
> (1) self-reported and voluntary admissions of violations(s);
>
> (2) implementation of remedial measures to correct or mitigate harm from the violation(s);
>
> (3) acknowledgment of wrongdoing and willingness to cooperate with the board, as evidenced by acceptance of an Agreed Order;
>
> (4) rehabilitative potential;
>
> (5) prior community service and present value to the community;
>
> (6) other relevant circumstances reducing the seriousness of the misconduct; and
>
> (7) other relevant circumstances lessening responsibility for the misconduct.

*Id.* Baker asserts that this rule requires that the Board make findings regarding all mitigating factors on which the licensee has presented evidence. Baker contends that he did present evidence of mitigating factors, including (1) he had no improper motive, (2) he only performed one kyphoplasty,

7

(3) he was board certified, and (4) no patient was harmed. Baker maintains that, based on that evidence, the Board was obligated by rule 190.15(b) to make findings on those mitigating factors.

As an initial matter, we note that Baker did not preserve this issue for judicial review. Baker was required to file a motion for rehearing of the Board's final order before seeking judicial review. *See* Tex. Gov't Code Ann. § 2001.145 (West 2008). Although Baker timely filed a motion for rehearing, it did not raise the complaint he makes here—that the Board violated rule 190.15 by failing to make findings on mitigating factors. The motion for rehearing is a statutory prerequisite to an appeal in a contested case and must be sufficiently definite to notify the agency of the error claimed so that the agency can either correct or prepare to defend the alleged error. *Suburban Util. Corp. v. Public Util. Comm'n*, 652 S.W.2d 358, 365 (Tex. 1983). For each contention of error, the motion must set forth (1) the fact finding, legal conclusion, or ruling complained of and (2) the legal basis of that complaint. *See Hamamcy v. Texas State Bd. of Med. Exam'rs*, 900 S.W.2d 423, 425 (Tex. App.—Austin 1995, writ denied). The standard is one of fair notice. *Burke v. Central Educ. Agency*, 725 S.W.2d 393, 397 (Tex. App.—Austin 1987, writ ref'd n.r.e.). We have reviewed Baker's motion for rehearing and conclude that it did not serve to put the Board on notice of his complaint that it had violated rule 190.15, or erred in any way, by failing to include in its final order findings on mitigating factors. Rather, Baker's motion for rehearing complains only that the Board did not consider giving him a lesser sanction than revocation. This is different from complaining that the Board violated its rules by not including in its order findings on mitigating factors and it did not serve to put the Board on notice that Baker believed it had, in that regard, failed to comply with its own rules.

In any event, even if preserved, this complaint would fail. This Court has previously held that under rule 190.15 the Board has the discretion, but is not required, to consider mitigating factors. *See Rodriguez-Aguero v. Texas Med. Bd.*, No. 03-09-00262-CV, 2010 WL 1730023, at *4-5 (Tex. App.—Austin Apr. 30, 2010, no pet.) (mem. op.). Specifically, we held that

> To the extent appellant argues that the Board was required to consider additional mitigating factors *or include additional findings of fact in its order*, we reject that complaint. The plain language of rule 190.15 allows the Board to consider mitigating factors, but does not require the Board to do so.

*Id.* (emphasis added). The Board was not required to consider mitigating factors or make findings as to mitigating factors. We overrule Baker's first issue.

### Due Process

In his third issue, Baker contends that the manner in which the administrative record was prepared and filed with the district court and this Court violated his due-process rights. Baker identifies several alleged due-process violations, and we will consider each in turn. First, Baker complains that the record was prepared by the Texas Medical Board rather than "an independent clerk of a court." The Administrative Procedure Act, however, provides that the administrative agency is responsible for the administrative record. *See* Tex. Gov't Code Ann. § 2001.175(b) (West 2008) ("After service of the petition on a state agency . . . the agency shall send to the reviewing court the original or a certified copy of the entire record of the proceeding under review."). The Act includes protections in the event a party to an agency proceeding is dissatisfied with the record. *See id.* (providing that court may require or permit later corrections or additions to record). Nevertheless,

9

Baker complains that the Board's preparation of the record violated his due-process rights because fourteen pages of the transcript of the hearing were missing. However, the record shows that upon the Board's being made aware of the missing pages, it immediately filed a supplemental record containing those pages. The initial omission followed by prompt supplementation in no way prejudiced Baker's rights.

Baker next complains that the record does not include a copy of the order denying his motion for rehearing. Even assuming such omission would have been prejudicial, in the present case the motion for rehearing was overruled by operation of law; consequently there is no order to include in the record.

Baker also complains that Exhibit 13 was omitted from the record. That item was an exhibit, offered by the Board, to which Baker lodged an objection. The ALJ sustained Baker's objection and did not admit the exhibit into evidence. The Board did not make an offer of proof seeking to include the exhibit in the record, and it was properly not made part of the administrative record. *See* Tex. Gov't Code Ann. § 2001.060(2), (4) (West 2008) (record in contested case includes evidence received or considered, questions and offers of proof, objections, and rulings on them).

Baker further asserts that the record should have included documents related to the settlement and proposed agreed order that was originally recommended by the ALJ but rejected by the Board. Setting aside whether such documents would even be admissible, Baker made no attempt to make those documents part of the record by seeking to have them admitted as evidence at the hearing. Having failed to do so, Baker cannot now complain that they should be part of the record.

Finally, Baker complains that the record does not include a transcription of the final hearing before the Board. The final hearing was not transcribed, and Baker points to no rule that would require such a transcription to be prepared. Moreover, the Board included the minutes of the final hearing in the supplemental record. In sum, Baker has failed to demonstrate how his complaints regarding the preparation of the record—even considering their cumulative effect—prejudiced his substantial rights. We overrule Baker's third issue.

## CONCLUSION

Having considered and overruled Baker's appellate issues and finding that the Board's order was supported by substantial evidence, we affirm the district court's judgment affirming the Board's final order.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed: February 6, 2013

11